WISDOM, Senior Circuit Judge:
 

 This appeal presents the issue whether a debt incurred under the terms of a divorce decree by a debtor who subsequently declares bankruptcy is nondischargeable because it is “in the nature of alimony, maintenance, or spousal support;” or, alternatively, the debt is a property settlement dischargeable in bankruptcy.
 
 See
 
 11 U.S.C. § 523(a) (1982). The bankruptcy court found that the debt was intended as spousal support and refused to grant the debtor a discharge.
 
 In re Shaver,
 
 27 B.R. 452, (Bankr.D.Nev.1983). The district court concurred in the bankruptcy court’s characterization of the debt, and held that the debt was nondischargeable. We affirm.
 

 I.
 

 Nancy Shaver, the plaintiff in this case, was divorced from the defendant-debtor, Peter Shaver, in June 1979. The Indiana Superior Court granting the divorce entered an initial decree providing that three of the couple’s four minor children would reside with Nancy, that Peter would pay Nancy $1500 a month in child support and $150,000 in settlement of Nancy’s “property rights”. The $150,000 debt was to be paid over a seventy-five month period at a rate of $2,000 a month.
 

 In December 1979, after a period of negotiations between Nancy and Peter, the court entered an amended decree.
 
 [1]
 
 Under its terms, Nancy would receive $197,300 over a ten-year period.
 
 [2]
 
 The debt was referred to in the decree as Nancy’s “marital and dower rights”. The payments were to cease upon Nancy’s death if her death occurred within the ten-year period.
 

 In March 1982, Peter Shaver filed a petition in bankruptcy. He asserts that the $197,300 debt owed to Nancy is a property settlement and is dischargeable in bankruptcy. Nancy Shaver instituted this action, contending that the debt is in the nature of alimony, maintenance, or support and is not dischargeable.
 

 II.
 

 The Bankruptcy Code of 1978 provides that an individual debtor does not receive a discharge from a debt owed “to a spouse, former spouse, or child ... for alimony to, maintenance for, or support of such spouse or child” if the debt is “actually in the nature of alimony, maintenance, or support”. 11 U.S.C. § 523(a)(5)(B) (1982). This section departs from the general policy of absolution, or “fresh start”, that is
 
 *1316
 
 embodied in the federal Bankruptcy Act. It enforces an overriding public policy favoring the enforcement of familial obligations.
 
 [3]
 

 See
 
 Comment,
 
 Putative Spousal Support Right and the Federal Bankruptcy Act,
 
 25 U.C.L.A.L.Rev. 96 (1977); Note,
 
 Dissolution of Marriage and the Bankruptcy Act of 1973: “Fresh Start” Forgotten, 52
 
 Ind.L.J. 469 (1977).
 

 Although Indiana law does not provide for alimony in the circumstances of this case,
 
 [4]
 
 the bankruptcy court was not bound by the treatment of the obligation in Indiana courts. Because of the federal interests reflected in the Bankruptcy Act, the courts look to federal law to determine whether an obligation is “actually in the nature of ... support” and is therefore nondischargeable.
 
 Stout v. Prussel,
 
 691 F.2d 859, 861 (9 Cir.1982).
 
 See Erspan v. Badgett,
 
 647 F.2d 550 (5 Cir.1981),
 
 cert. denied,
 
 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), in which the court stated that “regardless of how a state may choose to define ‘alimony’, a federal court, for purposes of applying the federal bankruptcy laws, is not bound to a label that a state affixes to an award, and that, consistent with the objectives of federal bankruptcy policy, the substance of the award must govern”.
 
 Id.
 
 at 555. Applying federal standards, the bankruptcy court determined that the debt at issue in this case was nondischargeable.
 
 In re Shaver,
 
 27 B.R. 452 (Bankr.D.Nev.1983). Because the right to a discharge in bankruptcy is a matter generally left to the sound discretion of the bankruptcy judge, we disturb this determination only if we find a gross abuse of discretion.
 
 Stout v. Prussel,
 
 691 F.2d 859, 861 (9 Cir.1982);
 
 see also In re Williams,
 
 703 F.2d 1055, 1057-58 (8 Cir. 1983), and
 
 In re Nelson,
 
 20 B.R. 1008 (D.Tenn.1982).
 

 In determining whether an obligation is intended for support of a former spouse, the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation.
 
 In re Maitlen,
 
 658 F.2d 466 (7 Cir.1981);
 
 In re Vickers,
 
 24 B.R. 112, 114 (Bankr.M.D.Tenn.1982);
 
 In re Ingram, 5
 
 B.R. 232, 234 (Bankr.N.D.Ga.1980); Comment,
 
 Putative Spousal Support Rights and the Federal Bankruptcy Act, 25
 
 U.C.L.A.L.Rev. 96, 101 (1977). The courts that have considered this issue have used several factors to aid in the characterization of the debt. If an agreement fails to provide explicitly for spousal support, a court may presume that a so-called “property settlement” is intended for support when the circumstances of the case indicate that the recipient spouse needs support.
 
 See Stout v. Prussel,
 
 691 F.2d 859, 861 (9 Cir.1982). Factors indicating that support is necessary include the presence of minor children and an imbalance in the relative income of the parties.
 
 In re Woods,
 
 561 F.2d 27, 30 (7 Cir.1977). Similarly, if an obligation terminates on the death or remarriage of the recipient spouse, a court may be inclined to classify the agreement as one for support.
 
 Id.; see also Matter of Albin,
 
 591 F.2d 94 (9 Cir.1979);
 
 In re Ferradino,
 
 14 B.R. 196, 198 (Bankr.D.Nev.1981);
 
 In re Ingram, 5
 
 B.R. 232, 235 (Bankr.N.D.Ga.1980). A, property settlement would not be affected by the personal circumstances of the recipient spouse; thus, a change in those circumstances would not affect a true property settlement, although it would affect the need for support. The court will look also to nature and duration of the obligation to determine whether it is intended as sup
 
 *1317
 
 port. Support payments tend to mirror the recipient spouse’s need for support. Thus, such payments are generally made directly to the recipient spouse and are paid in installments over a substantial period of time.
 
 Matter of Albin,
 
 591 F.2d 94, 97 (9 Cir.1979);
 
 In re Smith,
 
 436 F.Supp. 469 (N.D.Ga.1977).
 

 Each of these factors indicates that the award to Nancy Shaver was one for maintenance and support. No provision was made for Nancy’s support in the divorce decree. Yet, the facts indicate that support payments were necessary. Three minor children remained in her custody. She was unemployed and possessed no special job-related skills. At the time of the divorce, Peter Shaver was the sole owner of a car dealership and had substantial income. In making the so-called property settlement in the initial decree, the judge stated that he had considered “[t]he economic circumstances of the spouse at the time the disposition of property is to become effective [and] [t]he earnings or earning ability of the parties”. Such considerations are irrelevant to a true property settlement, but are of primary importance to a settlement intended for support. The amended decree, entered by agreement of the parties, provided for installment payments over a substantial period of time.
 
 [5]
 
 The payments were to cease if Nancy died within that time. These provisions are consistent with a support obligation.
 

 We agree with the district court that the intent of the parties in entering into the settlement agreement was to provide support to Nancy, and therefore that the obligation was “in the nature of alimony, maintenance, or support” under federal law. A support obligation is not dischargeable under the Bankruptcy Code. 11 U.S.C. § 523(a)(5)(B) (1982).
 

 The judgment of the district court is AFFIRMED.
 

 [1]
 

 . The stated purpose of the amended decree was to structure the payments in a way that would allow Peter to deduct them from his income taxes. To be deductible,' the payments have to constitute support.
 
 See
 
 26 U.S.C. § 71(a), (c)(2) (1982).
 

 [2]
 

 . The district court found that the additional 547,300 represented the taxes that Nancy would have to pay on the support payments received from Peter.
 

 [3]
 

 . The rationale for the exemption from discharge for support obligations is threefold: the protection of the spouse who may lack job skills or who may be incapable of working, the protection of minor children who may be neglected if the custodial spouse entered the job market, and the protection of society from an increased welfare burden that may result if debtors could avoid their familial responsibilities by filing for bankruptcy. Comment,
 
 Putative Spousal Sup
 
 port
 
 Rights and the Federal Bankruptcy Act,
 
 25 U.C.L.A.L.Rev. 96, 96-97 n. 7 (1977).
 

 [4]
 

 .
 
 See
 
 Ind.Code § 31-1-11.5-9, providing that a court may award alimony only when a spouse is incapacitated or when the parties agree in writing to an award of alimony. Neither circumstance applies to this case.
 

 [5]
 

 . In determining the nature of an obligation imposed by a divorce decree, the federal court must consider subsequent state court alterations in the decree.
 
 In re Vickers,
 
 24 B.R. 112, 115 (Bankr.M.D.Tenn.1982).