In re Lawrence Harold KRITT, Debtor.

**Lawrence Harold KRITT, Appellant,**

v.

**Martha KRITT, Appellee.**

BAP No. CC–93–2150–HMeO.
Bankruptcy No. LA 91–72497.
Adv. No. 91–05879.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Oct. 18, 1995.

Decided Dec. 7, 1995.

Charles L. Firestein, Phoenix, AZ, for Appellant.

Martin A. Gold, Beverly Hills, CA, for Appellee.

Before HAGAN, MEYERS and OLLASON, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge:

Lawrence Harold Kritt ("debtor") is a chapter 7 debtor. Martha Kritt ("Martha") filed an adversary proceeding against the debtor, seeking to have the debtor's obligation to Martha determined to be nondischargeable. After a trial, the bankruptcy court held the debt was nondischargeable under 11 U.S.C. § 523(a)(5). The debtor appeals. We AFFIRM.

## FACTS

The debtor and Martha were married in 1960 and divorced in approximately November, 1987. As part of the divorce, on or about November 24, 1987, the debtor and Martha executed a "Marital Settlement Agreement" ("MSA"). The MSA provided, among other things, that the debtor would pay Martha $325,000.00. This obligation was specifically designated as an award of community property from the debtor to Martha. Despite the statement that the total amount payable was $325,000, the MSA provided for the following payment schedule: (1) $50,000 on or before December 1, 1987; (2) $275,000 plus interest at the rate of 7%, payable in 96 consecutive monthly installments of $3,000, beginning December 1, 1987, and ending on November 1, 1995 (with a final payment of $566.10); (3) $25,000 on or before November 1, 1989; and (4) $50,000 on or before November 1, 1993. The last two lump sum payments are unexplained. The total stream of payments is approximately $410,566.66. In the event the debtor was in default on these payment obligations for more than 10 days, the entire sum would become immediately due and payable.

The MSA also provided that both the debtor and Martha waived any and all rights for spousal support, and that the waiver would become effective upon the first payment of $50,000. The state court would retain no jurisdiction over spousal support.

The state court subsequently entered a judgment dissolving the marriage. The order incorporated provisions substantially the same as those found in the MSA.

The debtor filed a chapter 7 petition in early 1991. On July 17, 1991, Martha filed an adversary proceeding against the debtor seeking an order of the bankruptcy court that the payments due under the alleged community property division were nondischargeable payments in the nature of alimony, maintenance, or support under section [1] 523(a)(5).

Trial of the adversary proceeding was held on March 23, 1993. The record on appeal contains only portions of the transcript, and few of the exhibits. Included, however, are the income tax returns of the debtor for the years 1987–91, and the income tax returns of Martha for the years 1987–91. These returns show that (1) the debtor did not list the payments to Martha as alimony, and (2) Martha did not declare the payments she received as alimony income, with the exception of $3,000 on her 1991 tax returns.

On September 23, 1993, the bankruptcy court issued its memorandum of decision containing findings of fact and conclusions of law. The court found that (1) during the course of the marriage and until its dissolution Martha was a homemaker; (2) the debtor had supported her both during the marriage and during the dissolution process (the latter pursuant to a pendente lite spousal support order); (3) during the dissolution the debtor maintained that his liabilities exceeded his assets; (4) the debtor made the $50,000 payment due December 1, 1987, the

---

**1.** Unless otherwise noted, all references to "section" are to the respective section of Title 11, United States Code.

$25,000 payment due November 1, 1989, and the monthly $3,000 payments through January 1, 1991; and (5) the monetary obligation in the MSA and the state court judgment was neither a distribution of then-existing community property nor a distribution to equalize the community property held by the parties. The court held the parties intended the monetary obligation as support, and characterized it otherwise as a legal fiction so that the parties would obtain a certain obligation that would be fixed regardless of changed circumstances on both sides. The court held the debt was nondischargeable under section 523(a)(5). Counsel for Martha was directed to prepare a form of judgment within 15 days.

The debtor filed his notice of appeal on October 1, 1993. The judgment was not entered until November 30, 1993. Pursuant to Rule[2] 8002(a), the notice of appeal is treated as timely filed on the same day.

## ISSUE

The sole issue on appeal is whether the monetary obligation found in both the MSA and state court judgment is nondischargeable under section 523(a)(5).

## STANDARD OF REVIEW

 The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo.

**2.** Unless otherwise noted, all references to "Rule" are to the respective Rule of the Federal Rules of Bankruptcy Procedure.

**3.** There appears to be some confusion regarding the proper standard of review for determinations of nondischargeability under section 523(a)(5). *See Gionis*, 170 B.R. at 679 n. 3; *Gard v. Gibson (In re Gibson)*, 103 B.R. 218, 220 n. 1 (9th Cir. BAP 1989). Compare *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984) and *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982) (both stating that such a determination was reviewed for "gross abuse of discretion") with *Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1456 (9th Cir.1992) (nondischargeability action under section 523(a)(2)(A); conclusions of law reviewed de novo). We find it appropriate in this case to deal with the apparent conflict in the same manner as did the panel in *Gionis*: by utilizing the stricter de novo standard for conclusions of law. 170 B.R. at 679 n. 3. Since we affirm under this

*Gionis v. Wayne (In re Gionis)*, 170 B.R. 675, 678–79 (9th Cir. BAP1994).[3]

## DISCUSSION

Section 523(a) provides in its relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

\* \* \* \* \* \*

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C. § 523(a)(5).[4]

The debtor presents several arguments in support of his appeal. First, the debtor contends that the parties agreed that the obligation was to be treated as a division of

stricter standard, we would consequently also affirm under the abuse of discretion standard.

It should be noted that the standard of review for findings of fact is unaffected. Fed.R.Bankr.P. 8013 (findings of fact are reviewed for clear error); *Gionis*, 170 B.R. at 680 ("clear error" review is applied even if all evidence was documentary); *Gibson*, 103 B.R. at 220 ("The precise determination at issue in this case—whether the liability at issue was one for maintenance, alimony or support—is generally considered a factual one, ... which cannot be set aside unless clearly erroneous." (citation omitted)).

**4.** Section 523 has subsequently been amended to add a new section 523(a)(15), which provides that property settlements are now generally nondischargeable in bankruptcy. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 304(e), 108 Stat. 4106, 4133 (1994). Because this case was filed before October 22, 1994, the effective date of the act, the amendment has no application here. *Id.*, § 702(b)(1), 108 Stat. at 4150.

community property, that they accepted the benefits of this bargain, and that therefore the bankruptcy court should have treated the obligation as being a mere property division. Second, the debtor contends Martha should be estopped from asserting that the obligation was for support, since she did not list the payments on the obligation as income on her federal and state tax returns. Third, the debtor contends that all evidence regarding the intent of the parties is barred by the parol evidence rule.

### 1. The Panel Should Not Remand Due To The Alleged Problems With The Transcript.

■ The debtor first contends that the Panel should remand the case to the bankruptcy court due to alleged problems with the transcript. The debtor contends that a portion of the tape of the trial was apparently damaged or garbled such that the cross-examination of Martha by debtor's counsel was lost. The debtor contends the absence of this portion of the transcript deprives him of his due process rights because he cannot present a full transcript to the Panel.

The debtor provided a citation to the transcript in support of his contention that there was a gap. We note the cited pages nowhere demonstrate any gap existed, nor is there any indication of a gap in any other portion of the excerpts of record. We also note that the debtor provided only 20 pages of the trial transcript; that there were more than 51 pages in the full transcript, based on the highest page number provided; and that the portions of the transcript provided contain only a single page of direct examination, the remainder being entirely cross-examination.

Rule 10(c) of the Federal Rules of Appellate Procedure, made applicable here by BAP Rule 13, provides a method by which an appellant may correct such deficiencies in the record. The fact that the debtor did not take advantage of that opportunity is not a denial of due process. As the Ninth Circuit held in another bankruptcy case:

Ashley contends that a substantial amount of his testimony at the bankruptcy proceedings was missing from the record made available to the district court. He

argues that the district court should have remanded the case to the bankruptcy court for a new trial or, at least, should have allowed him to supplement the record before making its ruling. In fact, Ashley *had* an opportunity to supplement the record. The appellate rules permitted him to "prepare a statement of [any missing] evidence or proceedings from the best available means, including [his own] recollection." Fed.R.App.P. 10(c). Ashley failed to do so, however.

In light of that failure, the district court was correct to deny Ashley's demand for a new trial. *See United States v. Mills*, 597 F.2d 693, 698 (9th Cir.1979); *id.* at 701 (Schwarzer, J., concurring in the judgment) ("[I]n the normal case, an appellant should not be entitled to raise an issue on appeal based on matters outside the record without compliance with Rule 10(c)."); *see also Herndon v. City of Massillon*, 638 F.2d 963 (6th Cir.1981); *Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30 (5th Cir.), *cert. denied*, 375 U.S. 906, 84 S.Ct. 197, 11 L.Ed.2d 146 (1963); 9 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 210.06 (2d ed. 1985) ("[A] party may not seek a new trial simply on the ground that matters that occurred in the [trial] court are not reflected in the transcript. He must at least make an effort to supplement the record by proceeding under Rule 10(c).").

*Ashley v. Church (In re Ashley)*, 903 F.2d 599, 605–06 (9th Cir.1990) (emphasis in original) (footnote omitted).

### 2. The Inadequacy of the Record.

■ It is disingenuous for the debtor to contend that he has been deprived of due process on appeal because of the alleged gap in the transcript, since the debtor chose to omit large portions of the available transcript from the excerpts of record. In so doing, the debtor by his own actions placed the bankruptcy court's findings of fact beyond review, and negated any harm that might have resulted from the alleged gap.

Rule 8009 provides in its relevant part:

(b) Appendix to brief. If the appeal is to a bankruptcy appellate panel, the appel-

lant *shall* serve and file with the appellant's brief excerpts of the record as an appendix, which *shall* include the following:

\*　　\*　　\*　　\*　　\*　　\*

(9) The transcript or portion thereof, if so required by a rule of the bankruptcy appellate panel.

F.R.B.P. 8009(b)(9) (emphasis added). BAP Rule 4 provides:

> Pursuant to Bankruptcy Rule 8009(b)(9), the excerpts of record shall include the transcripts necessary for adequate review in light of the standard of review to be applied to the issues before the panel. The panel is required to consider only those portions of the transcript included in the excerpts of record.

BAP Rule 4(c).

■ The appellants bear the responsibility to file an adequate record, and the burden of showing that the bankruptcy court's findings of fact are clearly erroneous. *Burkhart v. FDIC (In re Burkhart)*, 84 B.R. 658, 660 (9th Cir. BAP 1988). "Appellants should know that an attempt to reverse the trial court's findings of fact will require the entire record relied upon by the trial court be supplied for review." 84 B.R. at 661.

Here, the debtor has filed only 20 pages of excerpts from a transcript that exceeds 50 pages in length. With the exception of one page, the excerpts of the transcript consist entirely of the cross-examination of witnesses by the debtor's counsel. It is impossible for the Panel to review for clear error the court's finding that the monetary obligation was for support. Accordingly, we affirm the bankruptcy court's findings of fact on the grounds that the debtor has failed to show that they were clearly erroneous.[5]

The debtor's arguments may therefore be considered only insofar as they challenge the bankruptcy court's conclusions of law, and not its findings of fact.

**5.** The failure of debtor's counsel to comply with these rules is particularly egregious here. On pages 16–17 of the debtor's opening brief, debtor's counsel paraphrases both Rule 8009(b) and

3. *Neither The Label Given The Obligation, Nor The Parol Evidence Rule, Is Necessarily Determinative Of The Issue.*

■ The debtor contends that the bankruptcy court erred in holding that the monetary obligation was for support despite the fact the parties labeled it otherwise. This argument is not meritorious. "In determining whether an obligation is intended for support of a former spouse, the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation." *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984). *See also Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir. 1982) ("The district judge recognized that he was not required to accept the description or designation of items by the parties in a settlement or decree as conclusive of the question of whether the obligation was in the nature of support or settlement of property."); *Leppaluoto v. Combs (In re Combs)*, 101 B.R. 609, 615 (9th Cir. BAP 1989) ("The court should look to the substance of the obligation in the agreement, ... and generally should disregard labels and titles." (citations omitted)).

■ The debtor also contends that the parol evidence rule barred admission of any evidence regarding the parties' intent. We reject this argument as well.

> In interpreting a decree, and even in deciding if it is ambiguous, the court should consider the surrounding circumstances and all other relevant incidents bearing on the parties' intent when they entered into the decree. Parol evidence is admissible to clarify the parties' intent.

*See In re Shaver*, 40 B.R. 964, 968 (D.Nev. 1983), *aff'd*, 736 F.2d 1314 (9th Cir.1984). *Combs*, 101 B.R. at 616. *See also Brody v. Brody (In re Brody)*, 3 F.3d 35, 38–39 (2d Cir.1993) ("The parol evidence rule does not apply in cases such as the instant one, and factual inquiry under section 523(a)(5) is not limited to the four corners of a separation agreement or divorce decree.").

BAP Rule 4. In short, debtor's counsel failed to present an adequate record despite actual knowledge that such a record would be required.

#### 4. *Quasi Estoppel Does Not Apply.*

■ The final issue presented by the debtor involves estoppel. A number of cases have held that a debtor is estopped to deny that payments are for support where the debtor listed the payments as alimony on his income tax returns. *E.g., Robb–Fulton v. Robb (In re Robb),* 23 F.3d 895, 898–99 (4th Cir.1994); *Davidson v. Davidson (In re Davidson),* 947 F.2d 1294, 1297 (5th Cir. 1991); *Nowak v. Nowak (In re Nowak),* 183 B.R. 568, 570–71 (Bankr.D.Neb.1995). The debtor seeks to use these cases to estop Martha from claiming that the monetary obligation was alimony rather than a property division.

■ "One form of estoppel, 'quasi estoppel,' forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." *Davidson,* 947 F.2d at 1297. Quasi estoppel does not require detrimental reliance. *Id.* The *Davidson* court refused to permit the debtor to deduct his payments as alimony, and then contend before the bankruptcy court that the payments were in fact a property settlement.

> To allow a spouse to set up an intricate and unambiguous divorce settlement, carefully distinguishing certain periodic payments, called alimony, from the division of marital property, and consistently taking advantage of this characterization for tax purposes, only then to declare that the payments truly represented a division of property, would be a legal affront to both the bankruptcy and tax codes. To uphold the discharge of those payments in bankruptcy would reward an admitted manipulation tantamount, at best, to deception.

947 F.2d at 1297.

After due consideration, we respectfully reject the reasoning of *Robb, Davidson,* and *Nowak* insofar as they apply quasi estoppel to alimony payments that are characterized as a property division. The parties' characterization of the transaction on their tax returns is merely evidence of their intent regarding the transaction, and does not act to estop the party from taking a subsequently different position. Three reasons support the conclusion that quasi estoppel does not apply on the facts of the present case.

First, quasi estoppel is inconsistent with the court's obligation to examine the substance, rather than the form, of the transaction. The parties are not estopped to deny the nature of the debt as either alimony or a property division by the fact that they called it that in the agreement creating the obligation, or that they termed it that in submissions to the state court. *See Shaver,* 736 F.2d at 1316; *Stout,* 691 F.2d at 861; *Combs,* 101 B.R. at 615–616. In short, the parties are not bound by the label they use in creating the obligation itself. Because quasi estoppel would act to bind a party as a matter of law to the label used in the wholly collateral matter of filing income tax returns, it is inconsistent with well-settled precedent and must be rejected.

Second, section 523(a)(5) serves important public policies that should not be driven by the contents of a person's tax returns.

> The rationale for the exemption from discharge for support obligations is threefold: the protection of the spouse who may lack job skills or who may be incapable of working, the protection of minor children who may be neglected if the custodial spouse entered the job market, and the protection of society from an increased welfare burden that may result if debtors could avoid their familial responsibilities by filing for bankruptcy.

*Shaver,* 736 F.2d at 1316 n. 3 (citation omitted). For this reason, courts are directed to examine the substance, and not the form, of the obligation. Quasi estoppel is concerned only with the equitable relationship between the particular parties, not the larger interests of society as a whole. The application of quasi estoppel to cases such as this would restore form over substance at the expense of these public policy concerns.

Third, the application of quasi estoppel creates the very real possibility of inconsistent results. Under quasi estoppel, the filing of the first tax return after the divorce would permanently place the nature of the transaction beyond inquiry by the bankruptcy court. However, the taxing authorities are not

bound by the parties' characterization of the transaction, nor by the characterization applied by the taxpayer in the tax return. As is the case with the Bankruptcy Code, the determination of whether an obligation represents alimony or a property settlement for the purposes of income tax is determined by the substance, and not the form, of the transaction. *E.g., Beard v. Commissioner of Internal Revenue,* 77 T.C. 1275, 1283–84, 1981 WL 11310 (1981). *See also Bercy Indus., Inc. v. Commissioner of Internal Revenue,* 640 F.2d 1058, 1062 (9th Cir.1981) ("It has long been judicial practice in reviewing tax cases to look through the form of a transaction to its substance when scrutiny of form alone would subvert the purposes of the [Internal Revenue] Code.") (involving unrelated tax issues). The quasi estoppel rule stated in *Robb* and *Davidson* thus creates the possibility of two federal courts each examining the substance of the transaction and then reaching opposite results.[6]

We additionally note that the available portions of the transcript indicate that Martha instructed her accountant to prepare amended income tax returns for the years at issue, showing the payments as alimony.

Having reflected upon the quasi estoppel rule set forth in *Robb* and *Davidson,* and after searching our collective conscience, we respectfully conclude that these cases are incorrectly decided. Quasi estoppel based upon income tax returns does not apply to section 523(a)(5) actions where alimony payments have been treated as a property division on the tax returns. Martha was not estopped from arguing that the obligation was in fact in the nature of support.

## CONCLUSION

The debtor was not denied due process by the alleged gap in the record because he failed to take action to correct that deficiency. The inadequate record on appeal requires that the Panel affirm as to the findings of fact, and rendered harmless any injury to the debtor resulting from the alleged gap. The parol evidence rule is not applicable to this case. Quasi estoppel does not apply. The judgment of the bankruptcy court is affirmed.

---

**6.** In cases such as this one, a nondebtor spouse's right to alimony might be discharged on the ground that it was a property division, while at the same time back taxes might be assessed on payments already received on the ground that the payments were in fact alimony.