IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

ELSE V. ELSE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DENNIS R. ELSE, APPELLANT,
V.
CHERI K. ELSE, APPELLEE.

Filed June 10, 2014.    No. A-13-156.

Appeal from the District Court for Saunders County: MARY C. GILBRIDE, Judge. Affirmed.

John C. Hahn and Brent C. Stephenson, of Jeffrey, Hahn, Hemmerling & Zimmerman, P.C., L.L.O., for appellant.

John H. Sohl for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Dennis R. Else appeals a dissolution decree entered by the district court for Saunders County, Nebraska. On appeal, Dennis challenges the district court's denial of claimed expenses allegedly related to disposition of the parties' livestock. We affirm.

## II. BACKGROUND

Dennis filed a complaint seeking dissolution of his marriage to Cheri K. Else. Cheri answered and filed a cross-complaint for dissolution. Prior to trial, the parties entered into a property settlement agreement that resolved almost all of the issues between the parties. The court approved the property settlement agreement and directed the parties to divide their property in accordance with the agreement.

During the marriage, the parties had operated a livestock operation. They separated in February 2011. After the parties separated, the livestock operation continued. The operation involved two different components: a calving operation and a separate herd of heifers.

In November 2011, the parties presented their property settlement agreement to the court, which held a hearing and approved the agreement. Relevant to this appeal, the provision in the property settlement agreement related to the livestock operation was as follows:

> 6. LIVESTOCK. The livestock shall be sold with the net proceeds divided equally between the parties and all said sales shall take place not later than March 1, 2012. Further in the event that any livestock has been sold during the pendency of this action those proceeds shall also be included and accounted for and equally divided. [Dennis] shall make no further purchases of any livestock or equipment without receiving the express written consent of [Cheri]. Further, [Dennis] shall not sell any livestock without first notifying [Cheri] of the time and location of said sale and obtaining [her] express written consent.

In July 2012, the court held a final hearing on issues related to disposition of the livestock. At that hearing, Dennis sought to have various expenses he allegedly incurred related to the livestock included in the "net proceeds" determination and division for the disposition of the livestock and sought compensation for time spent related to the livestock. The issues on appeal concern only the expenses, and there are no issues related to Dennis' right to compensation.

At the hearing, Dennis presented evidence from the parties' son, a certified public accountant, who had attempted to compute the cattle operation's expenses claimed by Dennis. He had also prepared the parties' tax returns. He testified that he had computed the claimed expenses based on bank statements and canceled checks, but had not asked Dennis for receipts to verify the expenses. With respect to claimed mileage expenses, he testified that he did not know how many trips Dennis had made and had not received any kind of a log concerning mileage. He also testified that the parties had claimed comparable expenses as deductions on their tax returns, which both parties had signed.

The evidence Dennis adduced demonstrated that he continued caring for the cattle throughout the separation. He made trips of 160 miles or more each way, approximately once per week, to view the cattle, meet with the veterinarian, check fences, et cetera. Cheri had no involvement with the cattle.

The evidence also demonstrated that the parties had hired other individuals to provide care for the cattle.

Dennis was seeking to have expenses incurred for mileage, telephone, utilities, television, property taxes, repair and maintenance of vehicles, meals, small tools, and bank fees, which Dennis alleged were necessary for caring for the cattle and preserving their value for sale.

Cheri testified that the individuals hired to care for the cattle resulted in Dennis' alleged expenses not being necessary. She testified that Dennis could have checked pastures once every 1 or 2 months, could have checked the cattle's water once every 3 months, and could have checked the fences once per year. She testified that neighbors near the cattle would have contacted Dennis if there was actually a problem. She testified that she did not believe that any

of the trips Dennis had made to view the cattle were necessary and alleged that Dennis had actually traveled to facilitate gambling on horseracing.

On February 1, 2013, the district court entered a dissolution decree. The court decreed that the livestock proceeds and expenses should be divided as set forth in spreadsheets attached to the decree. Those spreadsheets allowed some of the expenses Dennis had claimed, but not all. Dennis has timely appealed the court's failure to include all of the claimed expenses.

### III. ASSIGNMENT OF ERROR

Dennis assigns as error that the district court erred in denying some of his claimed expenses regarding the cattle operation.

### IV. ANALYSIS

Dennis challenges the district court's distribution of property. Specifically, he challenges the court's determination concerning the proper distribution of expenses regarding the cattle operation. He argues the court erred in not including every expense that he alleged had been necessarily incurred in the cattle operation. We find no merit to Dennis' assertion on appeal.

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determination of property division; this determination, however, is initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. See *Bussell v. Bussell*, 21 Neb. App. 280, 837 N.W.2d 840 (2013). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Id.*

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. See *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012).

In this case, prior to trial, the parties entered into a property settlement agreement that resolved almost all of the issues between the parties. The court approved the property settlement agreement and directed the parties to divide their property in accordance with the agreement. The settlement agreement provided that the parties' livestock was to be sold with the net proceeds divided equally between the parties.

The primary issue litigated between the parties concerned expenses that Dennis alleged were incurred in the course of effectuating the sale of the livestock. Dennis presented expenses that he alleged were necessary and were incurred, and he sought to have the expenses deducted from the proceeds of sale to determine the net proceeds to be divided between the parties. Cheri disputed some of the expenses, both as to amount and as to necessity, and sought to have some of them excluded from the net proceeds calculation.

At its core, the controversy between the parties on this issue presented the trial court with a credibility issue on a fact question because the parties presented conflicting testimony about the expenses, their amounts, and their necessity. Cheri testified that Dennis was not capable of performing some of the work he alleged had been done, challenging the necessity of many of the

trips Dennis alleged had been necessary for preserving the value of the cattle, and testified that much of the work Dennis was seeking to include was performed by people the parties paid to care for the cattle.

The record also reflects that the parties' son had prepared Dennis' estimates of the expenses to be included, but had done so without receiving actual receipts. He testified that he had computed the claimed expenses based on bank statements and canceled checks, but had not asked Dennis for receipts to verify the expenses. With respect to claimed mileage expenses, he testified that he did not know how many trips Dennis had made and had not received any kind of a log concerning mileage.

The court ultimately entered its decree and included lengthy spreadsheets to demonstrate the assets and expenses to be distributed. A review of the record reveals that the spreadsheets attached to the court's decree are essentially identical to spreadsheets offered by Cheri at trial. Although the spreadsheets attached to the decree include a slightly different distribution of the equity in real estate if the parties' home were sold; slightly different dollar values for one bank account, a refund on car insurance, and a credit card debt; and new entries concerning health and dental bills and life insurance premiums, the spreadsheets generally reflect distribution of assets and expenses in accordance with Cheri's proposal set forth in an exhibit offered and received at trial.

Inasmuch as the parties both testified at trial, were subject to cross-examination, and presented exhibits to the court reflecting each party's proposed distribution of the estate, the court's decree reflects its resolution of credibility matters on conflicting factual questions. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. See *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012). We cannot find an abuse of discretion.

On appeal, Dennis also argues that the parties had filed tax returns in which the parties had claimed as deductions expenses that were comparable to the expenses Dennis was seeking to have included in the net proceeds calculation in this case. The parties' son testified at trial that he had prepared the parties' tax returns and that they had claimed comparable expenses as deductions on their tax returns, which both parties had signed.

Dennis urges this court to adopt a rule of quasi-estoppel and hold that once a party has made a representation on a tax return, that party is estopped from later making a contrary representation in dissolution proceedings. See *Amtrust Inc. v. Larson*, 388 F.3d 594 (8th Cir. 2004). We first note that the doctrine of quasi-estoppel does not seem to have previously been adopted in Nebraska state appellate courts; Dennis has not cited us to any Nebraska state appellate court cases. Although we recognize that some courts have adopted the quasi-estoppel doctrine and applied it in certain factual contexts, we decline to adopt the doctrine on the factual context presented in this case.

The doctrine of quasi-estoppel appears to be invoked most commonly in federal bankruptcy proceedings, where one of the issues for the court's resolution is whether a debtor should be estopped from making a contrary representation in the bankruptcy proceedings than had previously been made in other proceedings, such as on tax returns. See, *Amtrust Inc. v. Larson, supra*; *In re Robb*, 23 F.3d 895 (4th Cir. 1994); *In re Kritt*, 190 B.R. 382 (B.A.P. 9th Cir.

- 4 -

1995); *In re Kelley*, 216 B.R. 806 (E.D. Tenn. 1998). As Dennis points out, the doctrine has also been adopted and applied in dissolution of marriage proceedings by the Court of Appeals of New York. *Mahoney-Buntzman v. Buntzman*, 12 N.Y.3d 415, 909 N.E.2d 62, 881 N.Y.S.2d 369 (2009).

In *Amtrust Inc. v. Larson, supra*, the Eighth Circuit Court of Appeals explained the differences between the doctrines of judicial estoppel, equitable estoppel, and quasi-estoppel. The doctrine of judicial estoppel prevents a party from taking a position during litigation which is contrary to one taken *in a prior judicial or quasi-judicial* proceeding. *Id.* The doctrine of equitable estoppel precludes a party from denying previously asserted facts if the injured party relies upon that information. *Id.* The doctrine of quasi-estoppel has been invoked to estop parties from asserting a position in judicial proceedings different than what was reported on income tax returns. *Id.*

In *In re Kritt, supra*, the U.S. Bankruptcy Appellate Panel of the Ninth Circuit provided several reasons for being wary of adopting the doctrine of quasi-estoppel. That court concluded that although the parties' characterization of a transaction on tax returns is evidence of their intent, it does not act to estop a party from taking a subsequently different position. The court emphasized that in legal proceedings, the court is usually tasked with examining the substance, not just the form, of a transaction and parties are not usually bound by "the label they use" regarding a transaction. *Id.* at 388. The court also recognized the potential for inconsistent results, inasmuch as taxing authorities are not bound by the characterization first asserted by the parties and even the parties are able to modify the initial characterization through filing of amended returns.

As noted, it does not appear that the doctrine of quasi-estoppel has ever been adopted or applied in the state appellate courts in Nebraska. Dennis has cited us to no authority doing so, and we have not discovered any. We find the rationale of the court in *In re Kritt, supra*, persuasive and supportive of being wary of adopting the doctrine. We decline to adopt the doctrine to estop Cheri from challenging the propriety of the expenses alleged by Dennis in this case.

## V. CONCLUSION

We find no merit to Dennis' assertions on appeal, and we affirm the district court's decree.

AFFIRMED.